# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| DAVID WILLIAMSON and ELI CORDOVA, Each Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>CONOCOPHILLIPS and CONOCOPHILLIPS CO. | CASE NO: 2:17-cv-00103<br>COLLECTIVE ACTION (29 U.S.C. § 216(b))<br>CLASS ACTION (Fed. R. Civ. P. 23) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiffs David Williamson and Eli Cordova bring this lawsuit to recover unpaid overtime wages and other damages from ConocoPhillips and ConocoPhillips Co. (together, "ConocoPhillips") under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and the New Mexico Minimum Wage Act, NMSA § 50-4-19, et seq., ("NMMWA").

2. Williamson, Cordova, and the other workers like them regularly worked for ConocoPhillips in excess of 40 hours each week. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek. Instead of paying overtime as required by the FLSA and NMMWA, ConocoPhillips improperly classified Williamson, Cordova, and those similarly situated as independent contractors and paid them a daily rate with no overtime compensation. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

4. This Court also has federal jurisdiction over the state law class action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

5. The Court has supplemental jurisdiction over the various state sub-classes pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

7. Williamson, Cordova, and other Putative Class Members performed work related tasks for ConocoPhillips in this District and Division.

## THE PARTIES

8. Williamson worked for ConocoPhillips as a Completions Consultant from approximately February 2012 until February 2016. Throughout his employment with ConocoPhillips, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

9. Cordova worked for ConocoPhillips as a Wellsite Consultant from approximately January 2012 until February 2015. Throughout his employment with ConocoPhillips, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit B.

10. Williamson and Cordova each bring this action individually and on behalf of all similarly situated Completions and Wellsite Consultants, who were classified as independent contractors and paid under ConocoPhillips's day-rate system. ConocoPhillips paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and NMMWA. The class of similarly situated employees sought to be certified is defined as follows:

> **Completions Consultants and Wellsite Consultants employed by, or working on behalf of, ConocoPhillips and/or ConocoPhillips Company during the last three years who were classified as independent contractors and paid a day-rate.**

11. The Putative Class Members who worked in New Mexico within the past three years are subject to the Rule 23 class allegations made in this case.

12. ConocoPhillips is a foreign corporation that maintains its headquarters and principal place of business in Houston, Harris County, Texas. ConocoPhillips may be served with process through its registered agent: **CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas, 77002**.

13. ConocoPhillips Co. is a foreign company that maintains its headquarters and principal place of business in Houston, Harris County, Texas. ConocoPhillips Co. may be served with process through its registered agent: **United States Corporation Company, 211 E. 7th Street, Ste. 620, Austin, TX 78701.**

### COVERAGE UNDER THE FLSA

14. At all relevant times, ConocoPhillips has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all relevant times, ConocoPhillips has been part of an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

16. At all relevant times, ConocoPhillips has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17. At all relevant times, Williamson, Cordova, and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

18. As will be shown through this litigation, ConocoPhillips treated Williamson, Cordova, and all its workers that it classified as independent contractors and paid a day rate without overtime compensation, as employees and uniformly dictated the pay practices to which Williamson, Cordova, and the Putative Class Members were subjected.

19. ConocoPhillips's misclassification of Williamson, Cordova, and the Putative Class Members as independent contractors does not alter their status as employers for purposes of this collective action under the FLSA and/or Rule 23 class action under the NMMWA.

## FACTS

20. ConocoPhillips is an oil and natural gas exploration and production company operating worldwide and throughout the United States, including New Mexico. To provide services to many of its customers, ConocoPhillips contracts with certain companies to provide it with personnel to perform the necessary work.

21. Many of these individuals worked for ConocoPhillips on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. The alleged "employees" at issue are subjected to the same or similar illegal pay practices for similar work. Specifically, ConocoPhillips classified all these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

22. For example, Williamson worked for ConocoPhillips as a Completions Consultant from approximately February 2012 until February 2016.

23. And Cordova worked for ConocoPhillips as a Wellsite Consultant from approximately February January 2012 until February 2015.

24. Throughout their employment with ConocoPhillips, Williamson and Cordova were classified as independent contractors and paid on a day-rate basis.

25. As a Completions Consultant, Williamson's primary job duties included operating oilfield machinery, performing maintenance on the equipment used, and working with other oilfield employees to insert plugs, packers, and other blocking devices down well.

26. As a Wellsite Consultant, Cordova's primary job duties included ensuring wellsite compliance with company and governmental rules and regulations, investigating workplace injuries, conducting safety meetings, directing workers, influencing work flow, and filling out reports.

27. Williamson and Cordova worked well in excess of 40 hours each week while employed by ConocoPhillips, often for weeks at time.

28. The work performed by Williamson and Cordova was an essential part of ConocoPhillips's core business.

29. During Williamson and Cordova's employment with ConocoPhillips while they were classified as independent contractors, ConocoPhillips exercised control over all aspects of their jobs. ConocoPhillips did not require any substantial investment by Williamson or Cordova in order for him to perform the work required of him. ConocoPhillips determined Williamson and Cordova's opportunity for profit and loss. Neither Williamson nor Cordova were not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform their job duties.

30. Williamson worked exclusively for ConocoPhillips from approximately February 2012 until February 2016.

31. Cordova worked exclusively for ConocoPhillips from approximately January 2012 until February 2015.

32. ConocoPhillips controlled all the significant or meaningful aspects of the job duties performed by Williamson and Cordova.

33. ConocoPhillips ordered the hours and locations Williamson and Cordova worked, tools used, and rates of pay received.

34. Even though Williamson and Cordova often worked away from ConocoPhillips's offices without the presence of a direct supervisor employed by ConocoPhillips, ConocoPhillips still controlled all aspects of Williamson and Cordova's job activities by enforcing mandatory compliance with ConocoPhillips and/or its client's policies and procedures.

35. No real investment was required of Williamson or Cordova to perform their jobs. More often than not, Williamson and Cordova utilized equipment provided by ConocoPhillips to perform their job duties. Neither Williamson nor Cordova provided the equipment they worked with on a daily basis. ConocoPhillips and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Williamson and Cordova worked.

36. Williamson and Cordova did not incur operating expenses such as rent, payroll, marketing, and insurance.

37. During their employment, Williamson and Cordova were economically dependent on ConocoPhillips.

38. ConocoPhillips set Williamson and Cordova's rates of pay and work schedule, and ConocoPhillips prohibited them from working jobs for other companies while working on jobs for ConocoPhillips.

39. ConocoPhillips directly determined Williamson and Cordova's opportunity for profit and loss. Williamson and Cordova's earning opportunities were based on the number of days ConocoPhillips scheduled them to work.

40. Very little skill, training, or initiative was required of Williamson or Cordova to perform their job duties.

41. The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by ConocoPhillips and/or its clients. Virtually every job function was pre-determined by ConocoPhillips and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of pre-determined parameters.

42. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree. The Putative Class Members did not have any supervisory or management duties. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing energy operations in the field.

43. Williamson and Cordova performed routine manual and technical labor duties that were largely dictated by ConocoPhillips and/or its clients.

44. Williamson and Cordova were not employed by ConocoPhillips on a project-by-project basis. In fact, while Williamson and Cordova were classified as independent contractors, they were regularly on call for ConocoPhillips and/or its clients and were expected to drop everything and work whenever needed.

45. Williamson and all the Completions Consultant Putative Class Members perform the same or similar job duties. They are also subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

46. Cordova and all the Wellsite Consultant Putative Class Members perform the same or similar job duties. They are also subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

47. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for weeks at a time.

48. ConocoPhillips paid Williamson, Cordova, and the Putative Class Members a day rate.

49. ConocoPhillips did not pay Williamson, Cordova, and the Putative Class Members overtime.

50. ConocoPhillips did not pay Williamson, Cordova, and the Putative Class Members a salary.

51. ConocoPhillips misclassified Williamson, Cordova, and the Putative Class Members as independent contractors.

52. Williamson and all other Completions Consultant Putative Class Members had the same job duties regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

53. If hired through a staffing company, Williamson and all other Completions Consultant Putative Class Members had the same job duties regardless of which staffing company they were hired through.

54. Williamson and all other Completions Consultant Putative Class Members were subject to the same pay practices regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

55. If hired through a staffing company, Williamson and all other Completions Consultant Putative Class Members were subject to the same pay practices regardless of which staffing company they were hired through.

56. Williamson and all other Completions Consultant Putative Class Members were paid a day rate regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

57. If hired through a staffing company, Williamson and all other Completions Consultant Putative Class Members were paid a day rate regardless of which staffing company they were hired through.

58. Williamson and all other Completions Consultant Putative Class Members were all not paid overtime regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

59. If hired through a staffing company, Williamson and all other Completions Consultant Putative Class Members were not paid overtime regardless of which staffing company they were hired through.

60. Williamson and all other Completions Consultant Putative Class Members were classified as independent contractors based on the same ConocoPhillips policies whether they were hired directly by ConocoPhillips or through a staffing company.

61. If hired through a staffing company, Williamson and all other Completions Consultant Putative Class Members were classified as independent contractors based on the same ConocoPhillips policies regardless of which staffing company they were hired through.

62. Cordova and all other Wellsite Consultant Putative Class Members had the same job duties regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

63. If hired through a staffing company, Cordova and all other Wellsite Consultant Putative Class Members had the same job duties regardless of which staffing company they were hired through.

64. Cordova and all other Wellsite Consultant Putative Class Members were subject to the same pay practices regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

65. If hired through a staffing company, Cordova and all other Wellsite Consultant Putative Class Members were subject to the same pay practices regardless of which staffing company they were hired through.

66. Cordova and all other Wellsite Consultant Putative Class Members were paid a day rate regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

67. If hired through a staffing company, Cordova and all other Wellsite Consultant Putative Class Members were paid a day rate regardless of which staffing company they were hired through.

68. Cordova and all other Wellsite Consultant Putative Class Members were not paid overtime regardless of whether they were hired directly by ConocoPhillips or through a staffing company.

69. If hired through a staffing company, Cordova and all other Wellsite Consultant Putative Class Members were not paid overtime regardless of which staffing company they were hired through.

70. Cordova and all other Wellsite Consultant Putative Class Members were classified as independent contractors based on the same ConocoPhillips policies whether they were hired directly by ConocoPhillips or through a staffing company.

71. If hired through a staffing company, Cordova and all other Wellsite Consultant Putative Class Members were classified as independent contractors based on the same ConocoPhillips policies regardless of which staffing company they were hired through.

72. ConocoPhillips's policy of failing to pay its independent contractors, including Williamson and Cordova, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

73. Because ConocoPhillips misclassified as independent contractors Williamson, Cordova, and ConocoPhillips's other purported independent contractors, they should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

74. ConocoPhillips's day-rate system violates the FLSA and the NMMWA because Williamson, Cordova, and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

**FLSA VIOLATIONS**

75. ConocoPhillips has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

76. ConocoPhillips knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. ConocoPhillips's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

77. Accordingly, Williamson, Cordova, and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

### RULE 23 ALLEGATIONS—VIOLATIONS OF THE NMMWA

78. Williamson incorporates all preceding paragraphs. The duties, pay, and working conditions applicable to the Putative Class Members described above also applies to all workers in New Mexico.

79. The conduct alleged violates the NMMWA.

80. At all relevant times, ConocoPhillips was subject to the requirements of the NMMWA.

81. At all relevant times, ConocoPhillips employed Williamson and each Putative Class Member with New Mexico state law claims, as an "employee" within the meaning of Section 50-4-21 of the NMMWA.

82. Putative Class Members who possess New Mexico state law claims are members of the New Mexico Class.

83. The New Mexico Class is defined as:

**Completions Consultants and Wellsite Consultants employed by, or working on behalf of, ConocoPhillips and/or ConocoPhillips Company in New Mexico as independent contractors and paid a day-rate instead of time and one-half for hours worked in excess of forty (40) hours in a workweek during the last three (3) years.**

84. Pursuant to Section 50-4-22 of the NMMWA, "an employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."

85. Pursuant to Section 50-4-26 of the NMMWA, ConocoPhillips is liable to Williamson and the New Mexico Class "in the amount of their unpaid or underpaid minimum wages plus

interest, and in an additional amount equal to twice the unpaid or underpaid wages." Further, ConocoPhillips shall pay Williamson's and the New Mexico Class's attorney fees and costs. *Id.* Lastly, the Court "may order appropriate injunctive relief, including requiring an employer to post in the place of business a notice describing violations by the employer as found by the court or a copy of a cease and desist order applicable to the employer." *Id.*

86. ConocoPhillips violated the NMMWA by requiring Williamson and the New Mexico Class to perform non-exempt, technical and manual labor for many hours well in excess of 40 hours in a single workweek.

87. Defendant failed to accurately record Williamson's and the New Mexico Class's hours and failed to provide 1.5 times their regular rates of pay for overtime worked.

88. Therefore, Defendant is liable for back wages, double damages, attorney fees, and costs to Williamson and the New Mexico Class.

89. The improper pay practices at issue were part of a continuing course of conduct, entitling Gleason and the Class Members to recover for all such violations, regardless of the date they occurred. NMSA § 50-4-32.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

90. Williamson and Cordova incorporate all previous paragraphs and allege that the illegal pay practices ConocoPhillips imposed on them were likewise imposed on the members of the Classes.

91. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

92. Numerous other individuals who worked with Williamson and Cordova indicated they were improperly classified as independent contractors, paid in the same manner, performed

similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

93. Based on his experiences and tenure with ConocoPhillips, Williamson and Cordova are aware that ConocoPhillips's illegal practices were imposed on the members of the Classes.

94. The members of the Classes were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

95. ConocoPhillips's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

96. Williamson and Cordova's experiences are therefore typical of the experiences of the members of the Classes.

97. The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

98. Neither Williamson nor Cordova has any interest contrary to, or in conflict with, the members of the FLSA Class or New Mexico Class as defined below. Like each member of the Classes, Williamson and Cordova has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

99. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

100. Absent this action, many members of the Classes likely will not obtain redress of their injuries and ConocoPhillips will reap the unjust benefits of violating the FLSA and applicable state labor laws.

101. Furthermore, even if some of the members of the Classes could afford individual litigation against ConocoPhillips, it would be unduly burdensome to the judicial system.

102. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

103. The questions of law and fact common to each of the members of the Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

- (a) Whether ConocoPhillips employed the members of the Classes within the meaning of the FLSA and the NMMWA;
- (b) Whether the members of the Classes were improperly misclassified as independent contractors;
- (c) Whether ConocoPhillips's decision to classify the members of the Classes as independent contractors was made in good faith;
- (d) Whether ConocoPhillips's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;
- (e) Whether ConocoPhillips's violation of the FLSA and the NMMWA was willful; and
- (f) Whether ConocoPhillips's illegal pay practices were applied uniformly across the nation to all members of the Classes.

104. Williamson and Cordova's claims are typical of the claims of the members of the Classes. Williamson and the members of the Classes sustained damages arising out of ConocoPhillips's illegal and uniform employment policy.

105. Neither Williamson nor Cordova know of any difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

106. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

**JURY DEMAND**

107. Williamson and Cordova demand a trial by jury.

**RELIEF SOUGHT**

108. WHEREFORE, Williamson and Cordova pray for judgment against ConocoPhillips as follows:

(a) For an order allowing this action to proceed as a collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding ConocoPhillips liable for unpaid back wages, and an equal amount of liquidated damages, due to Williamson, Cordova and the class members;

(c) For an order designating the NMMWA class pursuant to Federal Rule of Civil Procedure 23;

(d) For an order appointing Williamson, Cordova, and their Counsel to represent the interests of the both the FLSA and NMMWA classes;

(e) For an order awarding Williamson, Cordova, and the class members the costs of this action;

(f) For an order awarding Williamson, Cordova, and the class members their attorneys' fees;

(g) For an order awarding Williamson, Cordova, and the class members unpaid benefits and compensation in connection with the FLSA and NMMWA violations;

(h) For an order awarding Williamson, Cordova, and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(i) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

**BRUCKNER BURCH PLLC**

By: ___*/s/ Matthew S. Parmet*___
      Richard J. (Rex) Burch
      Texas Bar No. 24001807
      S.D. Tex. ID No. 21615
      Matthew S. Parmet
      Texas Bar No. 24069719
      S.D. Tex. ID No. 1076547
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com